argument of the day, 23-3170 U.S. v. Williams, Pincus and Brown on the same day. I think you're the two I see more than any other attorney. Good morning. May it please the court. Kayla Gassman for the appellant Ernest Williams. After state prosecutors were unable to proceed against Mr. Williams on drug distribution charges without the confidential informant as a witness, Mr. Williams' federal supervised release was revoked based on the same allegations as in the state case, based on evidence created by that confidential informant who was never presented for cross-examination. The district court erred in this case when it revoked Mr. Williams' supervised release based on the finding that he distributed fentanyl to that confidential informant. I think there were several gaps in the case here, so the confidential informant was the primary, I would say, adverse witness in the case. She was the only eyewitness to the interaction in the vehicle. She was the witness who initiated the alleged buy, who set up the alleged buy, and she was the person who created the video that was then the primary evidence that the district court relied on to find the violation, and the government did not present her for cross-examination. The officers in the case admitted that they did not fully search the informant prior to the buy because the informant was a woman and the two officers involved were men, and so they did not fully search, for example, underneath clothing, underneath her bra, when the package of fentanyl that she provided to them was a one-inch by one-inch plastic bag. So they essentially did not search the places where someone would hide an item of that size if they were attempting to conceal it, and that undermines, I think, the reliability of the buy. The government never presented any additional evidence about the veracity or reliability of the informant. For example, whether she had participated in similar buys in the past and what the results were, whether she had previously provided truthful information, what her incentive was to initiate this buy, what her involvement was with drug trafficking, whether she had charges she was working off, why she would initiate this alleged buy. None of the evidence about the confidential informant and her veracity was introduced to perhaps fill in the gaps of the inadequate procedures. The officers did not recover. They testified they gave the informant $200 in marked bills to conduct the buy, but they never recovered those bills, so they could not trace what happened to them. The officers also testified that they did not listen, they either did not listen or did not remember if they listened to the conversations between the informant and Mr. Williams prior to this interaction in the vehicle. So the only evidence in record at all that they were meeting in this parking lot for the purpose of the drug transaction was this untested hearsay by the confidential informant who told the officer that she could set up a buy and buy fentanyl from someone who went by the name of Reese. But the officers did not listen to the conversations where she set up the meeting with Mr. Williams. So her hearsay was the only evidence that this had anything to do with drugs prior to their meeting. I do think it's significant. I want to focus a little bit more on the search because the officers, two officers, both testified that they did not fully search the informant. And this court's case law provides, and other circuits' case law provides, that a controlled buy can be reliable evidence of drug distribution if the common formalities of the control element, the things that make it a controlled situation, are substantially followed. And one of those formalities is searching the informant prior to being intercepted by to ensure that this person does not already have the contraband themselves so that then if they go to the interaction and then leave with contraband, that it's an inference that they received it during this interaction. Do any of these cases involve a charge that's where the burden of persuasion is preponderance of the evidence rather than beyond a reasonable doubt? So the cases that I'm citing in the brief are actually even on lesser standard. They are probable cause cases. And they are typically warrant cases usually where the evidence supporting issuance of a warrant was a controlled buy. And do you have cases where because it wasn't adequately controlled, the court found that there wasn't probable cause? There is one district court case cited in the briefs. I am blanking on the name of it. It's I believe out of the Western District of Kentucky where the court said that there was no probable cause for the warrant because the buy was not sufficiently controlled. And one of the things that did not happen was an adequate search of the informant prior to the buy. And that again is a probable cause case, which is a lesser standard than preponderance of the evidence. So if it's not even sufficient for probable cause without sufficient control, then it's necessarily not sufficient for preponderance of the evidence. And again, I think it's important that the key fact I think is, you know, I have in my memory that I couldn't find the case that there was a quote from Justice Scalia about like if you're looking for a lawnmower, you can't look under the bed. You know, the scope of the search is to find out what you're looking for. Well here, what they were looking for when they're searching the informant is a one inch by one inch package of drugs. So if that's what you're looking for, the search has to be at least complete enough that you're searching the places where something like that could reasonably easily be concealed. Was there a camera on? It wasn't clear to me what was recorded visually here, but there was something on her, on the informant, right? She had some sort of, was it a camera? Oh, you mean the recording device? Yeah. Yeah, it was a camera. The video, you know, I don't think it's in the record like exactly where it was or what it looked like, but the video was from the perspective, it was clearly like on the informant's person. Was there also a camera in the police vehicle? I don't, if there was, I don't believe any video. So it was the camera on the informant was on while she was in the police vehicle with the officer, but I don't think there was like a separate camera in the vehicle. If there was, it wasn't. Video from that angle was not introduced. So if you watch the video, the video starts in the Can you tell, there's no testimony, no evidence about specifically where it was on her body. Can you tell by what's being shown? I mean, I don't, I don't think so. I mean, I can't, I don't, you know, it could be, I think it would be purely speculative to say where it was. If it were on her forehead, I would think that the person who purportedly sold the drugs would be suspicious. Why does this woman have a, have a video camera on her forehead while we're talking? I mean, it's obviously something that's small enough to be like concealed from the naked eye, but I don't think it tells us there's anything in the record that tells us like how or where it was affixed, mounted, connected. I was wondering if there's anything that could show her movements enough that you could tell whether she could have reached in and gotten this, these drugs. So when I watch it, I mean, I, I don't think you, I don't think it can be ruled out because you just don't see, the video just doesn't show that perspective. It just shows, it's almost like the, when officers are wearing a body camera, you can't necessarily tell what the officer wearing the camera is doing because it's, you know, it's basically, it's a similar perspective, at least when, you know, when I watch the video. And again, I think it's, you know, so we have this failure to search for an item that is this small to search in the, I think the obvious areas where someone would hide something that size, if you were attempting to conceal it. I don't think the government had provided like additional information to fill that gap, like evidence about other, about her veracity or her reliability, like if she had done similar buys in the past and what the results were, if she had provided truthful information in the past, if there was, you know, some, some basis to bolster her reliability, then maybe that could fill the gap of, I think, the inadequate search. But we don't have that here. The government didn't even identify the informant. There's no name. There's no information about her involvement with drug trafficking. There's no information about whether she had charges at the time, whether her, what her criminal history was. There's no information about, like anything about her. So there was nothing to fill the gap with the inadequate search. And then I do think it's, so to me, the errors in this case are, are fairly closely related because, you know, the, we were not, we did not get the opportunity to cross the confidential informant. And those would have all been very bright areas for cross-examination had she been presented as a witness at the hearing. And, you know. Did you know her, did the defense know her identity? Had that been disclosed? I mean, Mr., I mean, I think it's clear, like, from the video that Mr. Williams knows who she is. Like, he, you know, he knows her, but we know, didn't have any information about any, like, any of her past involvement. You know, other, if she had provided truthful information or criminal history, none of that. But, like, Mr. Williams recognizes her in the car. And again, so I think that error is closely tied to the second issue of the case, which is the Rule 32.1b2 issue, where the district, which entitles Mr. Williams to an opportunity to question adverse witnesses unless the interests of justice don't require the witness to appear. And this court's case law provides that means that there's a balancing test, that the court should balance Mr. Williams' interest in cross-examination against the government's good cause for not producing a witness. Doesn't that apply only to hearsay testimony? So, this court's case law recognizes that it's usually about hearsay, but there's nothing in the rule that limits it to hearsay. And the rule speaks of adverse witnesses, not hearsay. And this court has said a couple of times that while it's usually applied to hearsay, this court has either said or assumed it's not limited to hearsay. For example, I think the Founce case was about cross-examination by Zoom, and this court at least assumed and said it's not hearsay because the witness appeared on Zoom and was available for questioning by Zoom, but they still assumed that the rule would still require the balancing test before the witness could be allowed to appear by Zoom versus in person. So, even though it wasn't hearsay, the court still assumed the rule would apply. So, in what way is she a witness if she's not testifying to something? So, here the rule says you have a right to question adverse witnesses. Here, she's the eyewitness. She's the only eyewitness. But that's not what we mean by witness. A witness is someone who presents evidence of the proceeding, who testifies. I'm not sure we would call someone unless it's hearsay. So, let me answer this and then try to reserve the remainder of my time. The rule says adverse witnesses. It's a limited due process right to question adverse witnesses. Here, I think she is the adverse witness because she's the only eyewitness. She created the video, which was the primary evidence admitted against Mr. Williams, and she initiated the buy, and there was hearsay from the informant admitted because, like I said before, the only evidence in the record that supported or showed that this meeting in the parking lot had anything to do with drugs was an out-of-court statement from the informant to the officer. Let me cut to the quick. Do you have any authority that someone whose statements are not admitted for their truth is an adverse witness under this rule? No, but I don't. I think it is more typical that it's about hearsay, but again, this court has said, has assumed it's not limited to hearsay, and the text of the rule does not say anything about hearsay. It says adverse witnesses. So I think that, and here, I think there could be closer cases on the margins, but here where she's the only eyewitness, she's the witness who set up the buy, who initiated the buy, and hearsay from her was admitted through the officer's testimony, but through his testimony that she said she could set up a buy, then she is an adverse witness under the rule. Well, are you familiar with, is it Roviero? I mean, there are cases, they're quite old, maybe over 50 years old, from the Supreme Court where the prosecution is required to disclose confidential informant who was present at the time of the buy, that sort of thing, but it's not a confrontation right. It's a due process right. It's quite limited, but I don't think they relied on the confrontation clause. Well, we're not relying on the confrontation clause either because Rule 32.1, it's rooted in due process, not confrontation, so it's, you know, it is a rule that entitles a defendant an opportunity to question an adverse witness. It doesn't speak of hearsay, it speaks of adverse witnesses. Okay. I will preserve a little time. Good morning, Your Honors. James Brown from Government. Your Honor, I'd like to start with issue two and discuss the failure to search issue that my colleague brought up. Discussing issue one, I think I need to start with a misstatement. The defendant has stated many times in argument this morning that there was hearsay admitted at the revocation hearing. In fact, there's no record evidence that any hearsay was admitted at the revocation hearing. What my colleague is referring to is a statement that the officer testified that the CIA advised him that they could purchase powder fentanyl from a subject who goes by the name of Reese. That's on Record Volume 3, page 35. The defendant says that is hearsay, but hearsay has a definition. It has to be offered for the truth of the matter asserted. There's no evidence in this record that the government offered that statement for the truth of the matter asserted. There's none. What was it offered for? It could have been offered to show why they were at the scene, but an objection would have cleared it up. The defendant has the duty to object. Look at the Frost quote on page 28 of our brief and the footnote. It's a determinative fact that is missing from the record due to defendant's failure to object. This court is not going to find plain error where a determinative fact of record is due to the defendant's failure to object. Here, the determinative fact of record that she has to rely on for her argument is that we offer that statement for the truth of the matter asserted, but there's no evidence of that in the record at all. That determinative fact upon which her hearsay argument relies entirely is not in the record. There's no record evidence for it. We take great exception to the statement we offer any hearsay at this revocation hearing. We do not. Is it typical at revocation hearings to make objections to hearsay since it's often admitted? Well, you know, the rules say you have to make a precise objection that's deft enough to alert the trial court to the precise ground that evidence is inadmissible. Here she's saying the evidence should not be admitted because of hearsay. Her whole argument is based upon the fact that so you would think that, yes, in a revocation hearing, the defendant would have a duty to object to hearsay. To preserve it. So our review in that circumstance would be plain error, is that right? Correct. It's preservation 101. Plain error applies. Exactly, Your Honor. There's another point. There's also another determinative fact that is missing from the record due to the defendant's failure to object, and that is the fact that she assumes or speculates that the district court may have relied upon this supposed hearsay statement in finding the defendant sold the fentanyl. In fact, there's no basis for any inference whatsoever that the district court relied on this so-called hearsay statement in finding that the defendant sold the fentanyl. That's another determinative fact that is missing from the record due to the defendant's for that basically summarizes issue one. Point number one, no testimonial hearsay was admitted at the revocation hearing, nor was any testimonial hearsay relied upon. Number two, because no testimonial hearsay was admitted at the revocation or relied upon, any confrontation right the defendant would have had in the Fifth Amendment was not implicated. Number three, for this reason, Rule 32.1 B2C was never triggered, and the district court did not even have a duty to address it because it was never triggered. In other words, there was no confrontation right under the Fifth Amendment in play in this case at any time. That's why there was no error for not conducting the balancing test. That's why there's no plain error. That's why there's no harmless error. That's why there's no effect on substantial charges. She said that this court has stated that the rule applies, is not limited to hearsay. Well, this court would disagree. She says that this court has said that. No, she says this court has never said that it doesn't. I think that's what she said. This court has never said it doesn't apply if it's not hearsay. But has the court ever said this rule is not limited to hearsay? This court has never said that the rule applies to non-hearsay. Has it ever explicitly left that issue open? In the Founce case, which we cited in our brief, the court considered a case where non-hearsay was an issue. And the court said, assuming without deciding that the rule applies. So the court assumed but did not decide that non-hearsay applies. So it's technically the question that's been left open by this court. We do cite two other circuits that have said that the rule does not apply to non-hearsay. That would be the Teixeira case from the First Circuit. In your brief. Yeah, Teixeira, First Circuit, 2023, the Williams case, the Second Circuit from 2006. But if the court, the reason the hearsay would not apply or the rule wouldn't apply to non-hearsay is because as this court applies the balancing test under Rule 32, the court applies the balancing test. Part one of the balancing test is balancing the person's interest in the constitutionally guaranteed right to confrontation. That's how the court said it in Jones, the constitutionally guaranteed right to confrontation. You don't have a constitutionally guaranteed right to confrontation unless there's testimonial hearsay that's presented. That's why hearsay is required. That's why it's required. We also, you know, and we found a pretty good article, we referenced it in the briefs, that it's called Friend or Foe, Sixth Amendment, Fifth Amendment, something like that. But it goes over this issue in depth. And we look at it. But that's why. So that's why we talk about the three points. Number one, no hearsay because there's no hearsay. Number two, no confrontation right. Number three, because no confrontation right, Rule 32 simply does not apply. Therefore, there's no basis for any claim of error whatsoever. What about sufficiency of the other? Sufficiency. So let's get to the sufficiency claim. And I say her, I don't mean that as an excuse. The court straightforwardly dealt with this issue. Keep in mind that we look at this issue based upon the standard, which is preponderance of the evidence and clear error. And of course, the court looks at the evidence in the light most favorable to the district court's rulings. So we have these three standards of review that we look at the sufficiency of the evidence through, right? Well, the court considered and discussed the fact that the officers did not perform as thorough a search as they could have of the CI because they were male and she was female. The court talked about that. And I put the court's comments on page 42 of our brief. I don't need to read them here for the court. The court has them. They're on page 42. But the court said, even if the search wasn't as complete as it could have been, I find it's more probably true than not that the defendant sold the fentanyl to the CI because we have a video. And the video shows what the court thought looked very much like a drug transaction and called the circumstances. They just didn't like it. She said, it's not just, the court said, it's not just like somebody coming off the street and saying, hey, I bought these drugs from this defendant on the street. There's a video that was set up. They arrived at the scene. They talked on the phone. They said, I'm here. You can hear that on the video. Yeah. I'm here. The CI goes. What does the video show after she leaves the officer's vehicle? It shows her, oh, after she leaves the officer's vehicle? To go toward the purported body. Okay. It shows, I think it doesn't show really anything. It shows them arriving at the scene. She's getting a call. They're talking. He's saying, I'm here. She's saying, okay. They park a few stalls away. The officer and the CI park a few stalls away. CI gets out of the car and goes into the defendant's car. So between the time she gets out of the car and goes in, I don't think you see very much of anything. No, no. Well, what about when she's in the other car? Does she get in the other, in the defendant's car? She gets in the defendant's car. And you can hear conversation? You can hear conversation. And I describe it in detail. Is it in English? It's in English. Okay. I describe it in detail in our brief with lots of record sites. She talks that they talk. They don't talk about, here's the drugs. These are the drugs. They don't mention the word drugs. And you don't see fentanyl being handed back and forth. And you don't see money being handed back and forth. You don't see that. You do see them discussing, can I put you in touch with my friend Daniel, talking about selling two Gs for $200. And you see basically, you see a scene from, she's sitting next to him and you can see the defendant and the CI's, I think, left leg. And you can see the defendant has a gun on his lap. But that's really all you can see. You can see part of his face sometimes, but it's not a great camera angle. It's not a Hollywood quality video. But that being said, the district court knew and considered and took into account that this search was not as complete as it could have been and found that it was still more probably true than not. The defendant sold the fentanyl to the CI and under the standards of review, meaning clear error or ponderance, lightness favorable, that ruling, the facts cited by the district court are a plausible interpretation of the facts. They're supported by the record and therefore the district court's finding cannot be clearly wrong. Thank you. Okay, I yield the remainder of my time. I'm going to give her a minute of your time since you yielded some. Otherwise, you're down to the last couple seconds, I think. No, nine seconds. Okay. I do just want to briefly address Bounce. I did not mean to overstate that case. What I need to say about Bounce is what the government said as well, which is that in that case, this court assumed the rule applied to non-hearsay. It doesn't hold that. I recognize that limitations of what it does say, but it does at least assume the rule applies to non-hearsay. The video is in the record, so it's available for the court to watch. In the conversation in the car shown on the video, Mr. Williams and the informant, they talk about who her boyfriend is. They talk about food stamps. They talk about Mr. Williams wanting to buy something from her or one of her friends. So the conversation- Did he say something about selling two Gs? That comes in the context that she says she's going to put him in touch with her friend. Again, the government didn't produce the confidential informant in the district court to explain what that meant. Say the context. In the context, she says, talks about, I'll put you in touch with my friend, and he says I'll sell her two Gs for $200. I don't want to answer that specifically because I'm not sure that my memories can offer the video, but the video is in the record. I guess my time has expired. We'll thank you for the additional minute, but we would ask this court to reverse. Thank you, counsel. Case submitted. Counselor excused. We're in-